Karen A. Confoy
Allison L. Hollows
**FOX ROTHSCHILD LLP**
Princeton Pike Corporate Center
997 Lenox Drive
Lawrenceville, NJ 08648
Tel: (609) 896-3600
Fax: (609) 896-1469
kconfoy@foxrothschild.com
ahollows@foxrothschild.com

*Attorneys for Defendants Merck & Co., Inc.*
*and Merck Sharp & Dohme Corp.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| CAROLE METZ, CYNTHIA JAMISON, CHARLENE HATFIELD, LEATRICE SMITH, ANTHONY TANKXLEY, DONNA ELLENBECKER, BEVERLY PARKINSON, ARNETTE WASHINGTON, HELEN HIBBITS, MARCIA LUCARELL, DOLORES HOLLAND, FREDERICK BICKLEMAN, MELINDA BOLIN, THELMA RIFFE, JERRY SMITH, ELINA MORALES, ERNEST J. VEATOR, JAMES F. HENDRICKS, JO AUTIN, JAMES SHIELDS, CHARLENE EDBLOM, BARBARA PUZDER, JAMES STILES, DOROTHY STINSON, JOANNE JONES, KIM VARNEY, ANN BROUHTON, JAMES T. TUNTLAND, EFFIE BURNHAM,LINDA BRODESKE, REBECCA STINSON,JOYCE RINALDI, FANNIE MUNDY, GUILLERMO RIOS, KATHRYN HAMPTON, JOYCE CHEEK, ELIZABETH GUBERUD, JOAN CYBULSKI, JACOB SANDE, GARY HANDLEY, PERRY SELLS, CARL NINAUS, JEANETTE KARADIMOS, PAULA HARRIS, SANDRA DICK, LAURA COCHRAN, RACHEL RYLES, CAROL FRANSON, CAROLYN BRYANT, | CIVIL NO. _____<br><br>**Removed from the Superior Court of New Jersey, Law Division, Middlesex County, Case No. MID-L-004236-18** |

MAUDIE EADS, BONNIE KWIATKOWSKI, JANICE ANDERSON, JOYCE A. LEATHERMAN, IMOGENE NEWBREY, ELSIE MASTROTA, JUDY LARATTA, LILLIE BAKER, BARBARA PASSARELLI, BLANCHE STOUT, KENNETH RASMUSSEN, JERRY ALLEN GREEN, BETTY MCCOMIC, IDA WOESTER, CLARETHA PAULK, CARMEN RIVERA, SHAWN PARRISH, MARIA HERNANDEZ, DONNA MCGREGOR, ARDELLA NELSON, SUSAN PEARL, SYLVIA EFIRD, SANDRA JACKSON, MARIA GORMLEY, CLIFTON FRANCISCO, RHONDA STEINLAUF, JEAN MACCOY, MARY ANNE MILLER, BRENDA CAVANAUGH, JOSEPH STRAHAN, REGINALD LEE, SUSAN WHITTINGHAM, CLARA HAMMONS, EDNA HIGGINS, ZELMA HANES, ENON TRACY, LESSIE SHEPARD, PATRICIA STRICKLAND, CYNTHIA SWALLOW, ALICE FURBER, KAREN KING, POLA MCCORKLE, EDITE RODRIGUES, OUIDA E. GREGORY, RICKY MOSES, JOE PASSMORE, MARION LEHMANN, HASSIE PRYOR, BRENDA BURTON, REE M. TURNER, FRANK SIMMONS, ROSCOE BOOSE, ROBERT THAYER, FRANCINE WOOD, GARY GAYDON, ROSALIND MOHAMED, DARLENE EVANS, CAROLYN SUE CARROLL, TOM MCKINNEY, ROBERT R. HERGAN, JOANN MCKENZIE, BETTY DAVIDSON, KEITH TESS, DELORIS STEVENS, ROXANNE MCGOWAN, BARBARA SHOPE, SHELBY DAVIS, LLOYD SEARS, GWENDOLYN MCDANIEL, MELISSA KENT, PATSY BEAVER, SAL PALAZZOLO, CAROLYN BARNES, NORMA KLAVINSKI, BRENDA HOWARD, JERRIE BARDWELL,RONA HARRIS, THOMAS BUDZINSKI, as Proposed Administrator of the Estate of

ROSLYN BUDZINSKI, and ELIZABETH RADDAOUI,

        Plaintiffs,

v.

MERCK & CO., INC., MERCK SHARP & DOHME CORP., and MCKESSON CORP.,

        Defendants.

**NOTICE OF REMOVAL**

**PLEASE TAKE NOTICE** that, pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, Defendants Merck & Co., Inc. and Merck Sharp & Dohme Corp. (collectively, "Merck") hereby give notice that the above-captioned action pending in the Superior Court of New Jersey, Law Division, Middlesex County, is removed to the United States District Court for the District of New Jersey.

**I.   INTRODUCTION**

1.   In this action, plaintiffs have fraudulently misjoined the claims of 127 unrelated individuals who seek recovery from Merck.[1]  Plaintiffs attribute their injuries to ZOSTAVAX®, Merck's FDA-approved vaccine that helps protect against herpes zoster (shingles).  *See* Ex. 1, Am. Compl. ¶ 1.[2]  Among other things, certain plaintiffs allege that, as a result of receiving Zostavax,

---

[1] Although mentioned in the caption, plaintiffs never again refer to "Patricia Strickland" in their complaint.  The Court therefore should disregard her for the purposes of determining diversity jurisdiction.  *See, e.g.*, *Hollins v. Godinez*, Civ. A. No. 14-cv-01306-NJR, 2014 WL 7366034, at *6 (S.D. Ill. Dec. 22, 2014) (ignoring allegations against parties named "in the case caption, but [] not mentioned in the factual allegations at all.  The Court must emphasize that '[a] plaintiff cannot state a claim against a defendant by including the defendant's name in the caption.'  More is required.") (quoting *Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998)); *McReynolds v. Cotton States Ins.*, Civ. A. No. 2:05-cv-232-MEF, 2005 WL 2146034, at *2 (M.D. Ala. Aug. 31, 2005) (finding that "Plaintiffs did not allege a cause of action against any of the additional individuals" "complete[ly] omi[tted]" "from the body of the Complaint" who appeared only in the case caption and noting that "'[a]lthough helpful to the court, the caption is not determinative as to the parties to the action'") (quoting C. Wright et al., *Fed. Prac. & Procedure* § 1321 (3d ed. 1990)).

[2] This action is one of many Zostavax cases pending in jurisdictions around the country.  For example, on August 2, 2018, the United States Judicial Panel on Multidistrict Litigation ("JPML") ordered that Zostavax-related cases pending in federal court be centralized in the Eastern District of Pennsylvania before the Honorable Judge Harvey Bartle III.  *In re: Zostavax (Zoster Vaccine Live) Prods. Liab. Litig.*, MDL No. 2:18-md-02848-HB ("MDL 2848").  As of November 5, 2018, there were 141 actions pending in that MDL, including 67 filed by plaintiff's counsel.

In addition, on August 15, 2018, the New Jersey Supreme Court designated "all litigation involving such allegations of injuries from use of the Zostavax vaccine as multicounty litigation" and assigned such cases for centralized case management before the Honorable Judge James F.

they subsequently "contracted a persistent strain of herpes zoster." *Id.* ¶¶ 9, 13, 17; *see also* **Exhibit 3** (table summarizing each plaintiff's alleged injuries).

2. Plaintiffs plead in a conclusory manner that their joinder in a single action is proper because they "assert a right to relief in respect of or arising out of the same transaction, occurrence, or common nucleus, series of transactions or occurrences, and questions of law and fact common to all such Plaintiffs will arise in the action." Ex. 1, Am. Compl. ¶ 143. Among the 127 plaintiffs are one who states that she is a resident of New Jersey, and one who states she is a resident of Delaware. *See id.* ¶¶ 80, 83. These plaintiffs do not defeat this Court's subject matter jurisdiction over the case, as plaintiffs' claims, including those of the New Jersey and Delaware residents, are fraudulently misjoined. *See Welsh v. Merck Sharpe & Dohme Corp. (In re Fosamax Prods. Liab. Litig.)*, MDL No. 2243 (JAP)(LHG), 2012 WL 1118780, at *4 (D.N.J. Apr. 3, 2012) (denying remand and holding that the claims of 91 plaintiffs were fraudulently misjoined because, "given the complicated causation questions that pervade drug product liability claims, Plaintiffs' claims will require divergent questions of law and fact"); *In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Prods. Liab. Litig.*, 294 F. Supp. 2d 667, 678 (E.D. Pa. 2003) (denying remand and holding that plaintiffs' claims in six different cases involving between 15 and 25 plaintiffs were fraudulently misjoined because "'claims of plaintiffs who have not purchased or received [FDA-approved] drugs from an identical source, such as a physician, hospital or diet center, do not satisfy the [same] transaction or occurrence requirement'" (quoting *Chaney v. Gate Pharm.*

---

Hyland ("New Jersey MCL"). *See* **Exhibit 2**, Notice to the Bar, Multicounty Litigation—Designation of Zostavax Litigation as MCL (Aug. 15, 2018). As of November 1, 2018, there were 321 actions pending in the New Jersey MCL, including 269 filed by plaintiffs' counsel here. In addition to this case, Merck is removing several more of those state court actions to this Court.

*(In re Diet Drugs Prods. Liab. Litig.)*, Civ. A. No. 98-20478, 1203, 1999 WL 554584, at *4 (E.D. Pa. July 16, 1999)).

3.  Further, the "forum defendant rule" does not prevent removal of plaintiffs' complaint because Merck, a citizen of New Jersey for diversity purposes, has not yet been served. *See Encompass Ins. Co. v. Stone Mansion Rest. Inc.*, 902 F.3d 147, 152 (3d Cir. 2018).

4.  As such, this case is properly removed to this Court pursuant to 28 U.S.C. § 1441 because Merck has satisfied the procedural requirements for removal and this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332.

5.  In support of removal, Merck respectfully states the following:

## II. MERCK HAS SATISFIED THE PROCEDURAL REQUIREMENTS FOR REMOVAL.

6.  On or about July 16, 2018, plaintiffs filed this action in the Superior Court of New Jersey, Law Division, Middlesex County.

7.  Removal to this Court is proper because it is "the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a); *see also id.* § 110 (providing that "New Jersey constitutes one judicial district").

8.  As of the date of this Notice of Removal, Merck has not been served with a summons or complaint in this action. Removal is therefore timely under 28 U.S.C. § 1446(b). *See, e.g.*, *Murphy Bros. v. Michetti Pipe Stringing*, 526 U.S. 344, 347-48 (1999).

9.  No further proceedings have been had in this action.

10. No previous application has been made for the relief requested herein.

11. Pursuant to 28 U.S.C. § 1446(a), copies of all process, pleadings, and orders are attached hereto collectively as **Exhibit 1**.

12. McKesson consents to the removal of this case to this Court. *See* **Exhibit 4**.

13. Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being served upon plaintiffs' counsel and a copy is being filed with the Clerk of the Superior Court of New Jersey, Law Division, Middlesex County.

## III. REMOVAL IS PROPER BECAUSE THIS COURT HAS SUBJECT MATTER JURISDICTION PURSUANT TO 28 U.S.C. §§ 1332 AND 1441.

### A. Complete diversity of citizenship exists among the parties.

14. Merck is now, and was at the time plaintiffs commenced this action, a corporation organized under the laws of the State of New Jersey with its principal place of business in New Jersey and, therefore, is now, and was at the time plaintiffs commenced this action, a citizen of New Jersey for purposes of determining diversity. *See* 28 U.S.C. § 1332(c)(1); Ex. 1, Am. Compl. ¶¶ 136, 137 (alleging that Merck & Co., Inc. is a New Jersey corporation with a principal place of business in New Jersey and that Merck Sharp & Dohme Corp. is a New Jersey corporation with "its headquarters" in New Jersey).

15. McKesson is now, and was at the time plaintiffs commenced this action, a corporation organized under the laws of Delaware with its principal place of business in California and, therefore, is now, and was at the time plaintiffs commenced this action, a citizen of California and Delaware for purposes of determining diversity. *See* 28 U.S.C. § 1332(c)(1); Ex. 1, Am. Compl. ¶ 138 (alleging that McKesson "is a Delaware Corporation with its principal place of business" in California).

16. One hundred twenty-five of the 127 plaintiffs in this action are completely diverse from all of the named defendants. *See* Ex. 3 (table summarizing each plaintiff's alleged state of residence); *see also, e.g.*, *D.C. v. Murphy*, 314 U.S. 441, 455 (1941) (place where person lives is properly taken to be that person's domicile until established to the contrary). Plaintiff Maria Gormley alleges that she is a citizen of the State of New Jersey. *See* Ex. 1, Am. Compl. ¶ 80.

4

Plaintiff Jean MacCoy alleges that she is a citizen of Delaware. *See id.* ¶ 83. Their presence in this lawsuit should not defeat diversity for the diverse plaintiffs because their claims were fraudulently misjoined.

### B. Plaintiffs cannot fraudulently misjoin claims to evade this Court's subject matter jurisdiction.

17. Under the fraudulent misjoinder doctrine, "[e]ven if a non-diverse plaintiff may have a valid cause of action against a defendant, that plaintiff may not prevent removal based on diversity of citizenship if there is no reasonable basis for the joinder of that non-diverse plaintiff with the other plaintiffs." *Weaver v. Am. Home Prods. Corp. (In re Diet Drugs Prods. Liab. Litig.)*, 294 F. Supp. 2d 667, 673 (E.D. Pa. 2003). The doctrine has been recognized by courts throughout the country. *See, e.g.*, *In re Benjamin Moore & Co.*, 318 F.3d 626, 630-31 (5th Cir. 2002) (noting "fraudulent misjoinder of plaintiffs is no more permissible than fraudulent misjoinder of defendants to circumvent diversity jurisdiction"); *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1360 (11th Cir. 1996) (applying doctrine where plaintiffs' claims were "egregious[ly]" misjoined to defeat federal jurisdiction and had "no real connection" to one another); *In re Rezulin Prods. Liab. Litig.*, 168 F. Supp. 2d 136, 145-46 (S.D.N.Y. 2001) (prescription drug plaintiffs' claims fraudulently misjoined where they did not "allege that they received Rezulin from the same source or that they were exposed to Rezulin for similar periods of time"). Moreover, it "is particularly relevant to large pharmaceutical product liability actions" where plaintiffs from multiple states, with no connection to each other, are misjoined in a single complaint. *Welsh*, 2012 WL 1118780, at *3.

18. The fraudulent misjoinder analysis requires two steps. First, a court must determine whether claims have been misjoined. *Id.* There is some disagreement among courts as to whether state or federal rules on permissive joinder should be applied, but in many cases (as here), the

5

question is academic because the state and federal rules are essentially identical. *See Belbin v. Conrail (In re Paulsboro Derailment Cases)*, Civ. A. No. 13-784 (RBK)(KMW), 2014 WL 197818, at *5 n.3 (D.N.J. Jan. 13, 2014) (noting disagreement on this issue, but finding New Jersey rule on permissive party joinder to be "virtually identical to its federal counterpart") (citations omitted); *see also Weaver*, 294 F. Supp. 2d at 673, 677 (determining state joinder rules should control, but noting that applicable Georgia rule "is virtually identical to Rule 20(a) of the Federal Rules of Civil Procedure"). Second, "the court must determine whether the joinder was egregious." *Welsh*, 2012 WL 1118780, at *3. Misjoinder is egregious where "[p]laintiffs attempt to join persons from . . . different states into one civil action who have absolutely no connection to each other except that they each ingested [the same drug]." *Chaney*, 1999 WL 554584, at *3.

### 1. Plaintiffs' claims are misjoined.

19. There is no question that under either federal or New Jersey state permissive joinder rules plaintiffs' claims are misjoined.[3] State and federal courts considering the issue with respect to Zostavax complaints filed by plaintiffs' counsel here have repeatedly held that plaintiffs' claims alleging injuries purportedly caused by Zostavax must be severed and filed as individual actions. In the New Jersey MCL, Judge Hyland's Initial Order for Case Management dictates that "[e]ach action shall be limited to one plaintiff and/or a related household of plainiffs. . . . All Plaintiffs listed in complaints prior to this order must move to bifuracte their claims and refile the complaints individually." **Exhibit 5**, Initial Order for Case Management, *In re: Zostavax Litig.*, No. MID-L-

---

[3] Under N.J. Court Rules, R. 4:29-1(a), plaintiffs may join their claims "if the right to relief . . . arises out of or in respect of the same transaction, occurrence, or series of transactions or occurrences and involves any question of law or fact common to all of them." In federal court, plaintiffs may join their claims if "they assert any right to relief . . . arising out of the same transaction, occurrence, or series of transactions or occurrences." Fed. R. Civ. P. 20(a)(1)(A). As noted, courts consider these rules to be virtually identical.

6

4999-18 (Super. Ct. Law Div., Aug. 24, 2018). Similarly, in MDL 2848 Judge Bartle issued a pretrial order stating that "[n]o action shall be filed with more than one plaintiff," and further that "[a]ll complaints heretofore filed which name more than one plaintiff . . . are severed." **Exhibit 6**, Pretrial Order No. 8, *In re: Zostavax (Zoster Vaccine Live) Prods. Liab. Litig.*, MDL No. 2:18-md-02848-HB (Doc. 22) (Oct. 3, 2018).[4]

20. In fact, plaintiffs' counsel were on notice before filing this action that plaintiffs' claims were improperly joined. For almost a year, courts have routinely severed claims or dismissed plaintiffs in multi-plaintiff Zostavax cases filed by plaintiffs' counsel. *See, e.g.*, *Endresen-Worthy v. Merck & Co., Inc.*, Civ. A. No. 2:18-cv-14095 (Doc. 48) (S.D. Fla. June 4, 2018); *Sheppard v. Merck & Co., Inc.*, Civ. A. No. 4:18-cv-00200 (Doc. 20) (M.D. Fla. Apr. 12, 2018); *Bowman v. Merck & Co., Inc.*, Civ. A. No. 8:18-cv-00434 (Doc. 20) (M.D. Fla. Mar. 16, 2018); *Patterson v. Merck & Co., Inc.*, Civ. A. No. 8:18-cv-00034 (Doc. 29) (M.D. Fla. Jan. 16, 2018); *Erickson v. Merck & Co., Inc.*, Civ. A. No. 6:17-cv-01672 (Doc. 37) (M.D. Fla. Nov. 21, 2017). These courts have explicitly held that plaintiffs' complaints violate the permissive joinder rules. *See, e.g.*, Order of Dismissal, *Martinez v. Merck & Co., Inc.*, Civ. A. No. 8:18-cv-01192 (Doc. 27) (M.D. Fla. July 11, 2018) (holding that plaintiffs' claims "do not arise out of the same transaction, occurrence, or series of transactions or occurrences" since the *Martinez* plaintiffs sought recovery for "inoculations in different parts of Florida spanning several years," pursued

---

[4] Pursuant to Pretrial Order No. 8, plaintiffs' claims in this action will be immediately severed upon transfer to MDL 2848. For this reason alone, and without consideration of plaintiffs' fraudulent misjoinder, any motion to remand those plaintiffs who are not residents of New Jersey should be denied. *See Moore v. Daiichi Sankyo, Inc. (In re Benicar (Olmesartan) Prods. Liab. Litig.)*, 198 F. Supp. 3d 385, 388 (D.N.J. 2016) (denying plaintiffs' motion to remand multi-plaintiff product liability action that had been transferred to an MDL because "the issue of complete diversity of citizenship is mooted by virtue of the management order requiring the severance of all existing multi-plaintiff complaints").

7

different liability theories, and emphasized "fraud and misrepresentations—which are fact-intensive inquiries unique to each Plaintiff"); *Pratt v. Merck & Co., Inc.*, Civ. A. No. 8:18-cv-01801 (Docs. 3 & 6) (M.D. Fla. Aug. 21, 2018) (dismissing claims of 22 out of 23 plaintiffs and stating "this and other courts have previously told Plaintiffs' counsel . . . it is inappropriate to join Plaintiffs in these actions"); *Richardson v. Merck & Co., Inc.*, Civ. A. No. 8:18-cv-01725 (Doc. 3) (M.D. Fla. July 18, 2018) (severing claims of plaintiffs because they alleged "injuries resulting from twenty distinct 'transactions,' 'occurrences,' or 'series of transactions or occurrences.' The plaintiffs were vaccinated at different times in different places by different practitioners and suffered different injuries.").

21. The orders in the Zostavax litigation thus far are entirely in line with decisions from courts within the Third Circuit. Plaintiffs here simply allege in a perfunctory, conclusory manner that "all Plaintiffs' claims arise from a common nucleus of fact and joinder is not prejudicial and is conducive to efficiency of based on commonality." Ex. 1, Am. Compl. ¶ 142. Plaintiffs fail to acknowledge, however, that "personal injury plaintiffs are . . . different people with different medical histories who separately took a drug prescribed by different physicians under different circumstances . . . and at different points in time." *Cumba v. Merck & Co., Inc.*, Civ. A. No. 08-CV-2328 (DMC), 2009 WL 1351462, at *1 (D.N.J. May 12, 2009) (holding that plaintiffs in a product liability action were misjoined and noting that "[t]he majority of courts to address joinder in the context of drug liability cases have found that basing joinder merely on the fact that the plaintiffs ingested the same drug and sustained injuries as a result thereof is insufficient to satisfy Rule 20(a)s 'same transaction' requirement") (citations omitted); *see also Weaver*, 294 F. Supp. 2d at 678 ("The claims of plaintiffs who have not purchased or received diet drugs from an identical source, such as a physician, hospital or diet center, do not satisfy the [same] transaction

or occurrence requirement.") (citations omitted).  Far from being vaccinated under the same circumstances by the same medical provider, plaintiffs here received Zostavax from providers in 33 different states, plus the District of Columbia and the U.S. Virgin Islands, at varying times between 2006[5] and 2015.  *See* Ex. 3 (table listing each plaintiff's state of residence and alleged vaccination date).  Each of these plaintiffs has a unique medical history, was allegedly vaccinated as a result of a patient-specific risk-benefit analysis by a unique healthcare provider, and received individualized medical care from different medical providers in different locales.  Moreover, plaintiffs experienced their alleged injuries in an individualized manner, with some plaintiffs alleging that they were diagnosed with shingles in relatively close proximity to their vaccination (*see, e.g.*, Ex. 1, Am. Compl. ¶¶ 8, 72, 97), while others allege years-long gaps between vaccination and injury (*see, e.g.*, *id.* ¶¶ 36, 45, 118).  Under these circumstances, joinder of plaintiffs is entirely inappropriate.  *See, e.g.*, *Weaver*, 294 F. Supp. 2d at 678 (noting that "[d]ifferent evidence surely will be required to litigate the claims of each of the . . . plaintiffs, such that judicial economy would not be served by trying them together" and holding that "the claims of plaintiffs clearly do not arise out of the same transaction, occurrence, or series of occurrences").

### 2. Plaintiffs' misjoinder is egregious.

22. Under the circumstances at issue here, plaintiffs' misjoinder of the claims of 127 unrelated plaintiffs is egregious and therefore fraudulent.  There is no question that plaintiffs' counsel have long been aware that it is inappropriate to join plaintiffs' claims in the manner done here, regardless of the jurisdiction in which the claims are filed.  Clear orders issued in MDL 2848 and the New Jersey MCL require individual plaintiffs' claims be pleaded individually.  Courts also have severed or dismissed Zostavax claims alleged in eight complaints that plaintiffs' counsel filed

---

[5] Plaintiff Melissa Kent alleges that she was vaccinated in 2002 at Rite Aid, but this is not possible as Zostavax was not approved by the FDA until 2006. Ex. 1, Am. Compl. ¶ 125.

9

and that cumulatively involved 75 plaintiffs.[6] Nevertheless, plaintiffs' counsel have disregarded both the purpose of permissive joinder rules and the clear direction of multiple courts to persevere in filing misjoined claims. *See Welsh*, 2012 WL 1118780, at *5 (finding egregious misjoinder where "the factual, temporal, and geographic diversity among Plaintiffs' claims wholly disregards the purposes of permissive joinder because these are claims that no 'reasonable person would normally expect to be tried together'") (citing *Rudder v. K Mart Corp.*, Civ. A. No. 97-0272-BH-S, 1997 WL 907916, at *5 (S.D. Ala. Oct. 15, 1997)). At this point in the Zostavax litigation, no reasonable person could believe that the claims at issue here are appropriately joined. In fact, the two potential venues for plaintiffs' claims, MDL 2848 and the New Jersey MCL, have both determined as a matter of law that multi-plaintiff complaints must be severed and brought individually. Plaintiffs' ongoing noncompliance with those rulings cannot evade the subject matter jurisdiction of this Court.

23. Moreover, plaintiffs have included the claims of two non-diverse plaintiffs in this case for no legitimate reason. Plaintiffs include no allegations that connect the diverse plaintiffs' claims to those made by the non-diverse plaintiffs, and none of the diverse plaintiffs plead any personal connection to New Jersey. Put simply, there is no logical reason for the non-diverse plaintiffs to be included in the complaint other than to frustrate federal jurisdiction over the diverse plaintiffs. Under these circumstances, plaintiffs' misjoinder is egregious. *See Welsh*, 2012 WL 1118780 at *5 (finding egregious misjoinder where complaint included "91 plaintiffs from 28 different states," with only three non-diverse plaintiffs); *Chaney*, 1999 WL 554584, at *3 (holding

---

[6] *Pratt*, Civ. A. No. 8:18-cv-01801 (Docs. 3 & 6); *Richardson*, Civ. A. No. 8:18-cv-01725 (Doc. 3); *Martinez*, Civ. A. No. 8:18-cv-01192 (Doc. 27); *Endresen-Worthy*, Civ. A. No. 2:18-cv-14095 (Doc. 48); *Sheppard*, Civ. A. No. 4:18-cv-00200 (Doc. 20); *Bowman*, Civ. A. No. 8:18-cv-00434 (Doc. 20); *Patterson*, Civ. A. No. 8:18-cv-00034 (Doc. 29); Civ. A. *Erickson*, No. 6:17-cv-01672 (Doc. 37).

that plaintiffs' misjoinder was egregious where only two of nine plaintiffs were non-diverse and "Plaintiffs fail[ed] to point to any logical basis for the proposed joinder of the nonresident Plaintiffs").

24. In sum, the claims of 127 unrelated plaintiffs have been fraudulently misjoined and one New Jersey plaintiff and one Delaware plaintiff were included in the complaint solely to frustrate this Court's exercise of diversity jurisdiction. For these reasons, the presence of one New Jersey plaintiff and one Delaware plaintiff in this lawsuit should not defeat diversity.

    **C.    Merck's status as a forum defendant is not a bar to removal because it has not been served.**

25. Pursuant to 28 U.S.C. § 1441(b)(2)—the "forum defendant rule"—an action otherwise properly removable "may not be removed if any of the parties in interest properly joined *and served* as defendants is a citizen of the State in which the action is brought." 28 U.S.C. § 1441(b)(2) (emphasis added).

26. Because Merck has not been served in this case, removal is proper based on a plain language reading of 28 U.S.C. § 1441(b)(2). The United States Court of Appeals for the Third Circuit recently affirmed this plain language reading of the statute and held that the forum defendant rule does not prevent removal if the defendant has not yet been properly served. *See Encompass Ins. Co.*, 902 F.3d at 152 (section 1441(b)(2)'s "plain meaning precludes removal on the basis of in-state citizenship only when the defendant has been properly joined and served"). In doing so, the Third Circuit resolved a split among district courts in this circuit, upholding the view of those courts allowing removal by an unserved forum defendant. *See In re Plavix® Prod. Liab. & Mktg. Litig.*, MDL No. 3:13-cv-2418-FLW, 2014 WL 4954654, at *4-5 (D.N.J. Oct. 1, 2014) (joining "majority of courts" in finding that, "so long as a properly joined forum defendant has not been served, the Removal Defendant's removal . . . is proper under § 1441(b)"); *Poznanovich v.*

*AstraZeneca Pharm. LP*, Civ. A. No. 11-4001 (JAP), 2011 WL 6180026, at \*4 (D.N.J. Dec. 12, 2011) (permitting removal by forum defendant prior to service of complaint); *Bivins v. Novartis Pharm. Corp.*, Civ. A. No. 09-1087 (RBK)(KMW), 2009 WL 2496518, at \*2 (D.N.J. Aug. 10, 2009) (rejecting argument "that courts should not reward defendants who monitor electronic dockets and remove cases before plaintiffs have a chance to serve them"); *Thomson v. Novartis Pharm. Corp.*, Civ. A. No. 06-6280 (JBS), 2007 WL 1521138, at \*4 (D.N.J. May 22, 2007) (permitting removal and finding that defendants' monitoring of state court dockets does not overcome the plain language of the statute and preclude removal); *Yocham v. Novartis Pharm. Corp.*, Civ. A. No. 07-1810 (JBS), 2007 WL 2318493, at \*3 (D.N.J. Aug. 13, 2007) (permitting removal because forum defendant "had not been served when it removed this case to this Court"); *Jaeger v. Schering Corp.*, Civ. A. No. 07-3465 (DMC), 2007 WL 3170125, at \*3 (D.N.J. Oct. 25, 2007) (same); *Frick v. Novartis Pharm. Corp.*, Civ. A. No. 05-5429 (DRD), 2006 WL 454360, at \*1 (D.N.J. Feb. 23, 2006) (same); *see also, e.g.*, *Valido-Shade v. Wyeth, LLC (In re Diet Drugs Prods. Liab. Litig.)*, 875 F. Supp. 2d 474, 477 (E.D. Pa. 2012) (stating that "there is simply no statutory requirement that the removing defendant must first have been served with the complaint").

27. A plain language reading of 28 U.S.C. § 1441 is consistent with Congressional intent. The Federal Courts Jurisdiction and Venue Clarification Act of 2011 left the "properly joined and served" language of the statute unchanged. Pub. L. No. 112-63; 125 Stat. 758 (2011). If removal in this manner is "contrary to Congress' intent, the legislature is well-suited to address the issue." *Encompass Ins. Co.*, 902 F.3d at 153 n.4 (noting that it is for Congress, not the courts, to address the possibility that "technological advances . . . giv[e] defendants an advantage in a race-to-the-courthouse removal scenario"); *Valido-Shade*, 875 F. Supp. 2d at 478 (acknowledging

12

that a defendant "by monitoring state court dockets electronically or otherwise, can dash to the federal courthouse almost immediately with a notice of removal before the complaint is served on it," but finding that if "this result is deemed to be bad public policy, the remedy lies with Congress which, subject to constitutional limitations, controls the scope of this court's subject matter jurisdiction and any right of removal"). Because Merck has not been served, this case is properly removed.

### C. The amount-in-controversy requirement is satisfied.

28. Plaintiffs do not aver a specific dollar amount of damages in the complaint. However, the fact that plaintiffs failed to stipulate a specific dollar amount of damages does not divest this Court of diversity jurisdiction.

29. Under 28 U.S.C. § 1446(c)(2)(A)(ii), a defendant may assert the amount in controversy in its notice of removal if removing from a jurisdiction where "[s]tate practice either does not permit demand for a specific sum or permits recovery of damages in excess of the amount demanded." Removal of a lawsuit is proper upon the defendant's assertion of the amount in controversy if the district court finds by a preponderance of the evidence that the amount in controversy exceeds $75,000, exclusive of interest and costs. *See* 28 U.S.C. § 1446(c)(2)(B); *see also Dart Cherokee Basin Operating Co. v. Owens*, 135 S. Ct. 547, 554 (2014) ("only a plausible allegation" by defendant that amount in controversy exceeds jurisdictional threshold is necessary for removal); *Frederico v. Home Depot*, 507 F.3d 188, 197 (3d Cir. 2007) (where plaintiff has not specifically averred amount in controversy less than jurisdictional minimum, remand is only proper where court finds to legal certainty that plaintiff cannot recover jurisdictional amount).

30. Plaintiffs seek damages for, among other things, "painful" personal injuries and "significant medical expenses." Ex. 1, Am. Compl. ¶¶ 8-133. Their claims purportedly sound in

13

negligence, design defect, failure to warn, breach of express warranty, breach of implied warranty, conscious misrepresentation involving risk of physical harm, negligent misrepresentation involving risk of physical harm, unjust enrichment, and strict liability, *id.* ¶¶ 243-926, and seek "compensatory damages for past, present, and future pain and suffering, medical costs and expenses, lost wages; prejudgment and post-judgment interest as allowed by law, costs of suit and attorneys' fees, as allowed by law, punitive damages, and any and all such other relief as the Court deems just and proper." *Id.* ¶ 926.

31.     Federal courts routinely find the amount-in-controversy requirement satisfied in cases in which plaintiffs make claims for allegedly significant personal injuries along with pain and suffering. *See, e.g.*, *Clark v. J.C. Penney Corp.*, Civ. A. No. 08-4083 (PGS), 2009 WL 1564175, at *4 (D.N.J. June 1, 2009) (finding amount-in-controversy requirement satisfied in slip-and-fall case because "damages for pain and suffering" for shoulder and knee injuries "could be significant"); *Avant v. J.C. Penney*, Civ. A. No. 07-1997 (JEI), 2007 WL 1791621, at *2 (D.N.J. June 19, 2007) (denying motion to remand because "jury could reasonably award" "damages in excess of $75,000" for injuries sustained from store mannequin falling on plaintiff); *Garofalo v. Medtronic, Inc.*, Civ. A. No. 97-1655 (AJL), 1997 WL 1049566, at *4, *5 (D.N.J. June 17, 1997) (finding "allegations of severe injuries along with pain and suffering" sufficient to put defendant "on notice that [plaintiff] had a claim in excess of $75,000") (quotation marks and citation omitted); *see also, e.g.*, *Myers v. State Farm Mut. Auto. Ins. Co.*, Civ. A. No. 17-3509, 2017 WL 3592031, at *2 (E.D. Pa. Aug. 21, 2017) (amount-in-controversy requirement satisfied when plaintiff alleged injuries from a car accident, including injuries to her body including to her neck and shoulder, resulting in physical pain, serious injury, and mental anguish); *Torres v. Geico Ins. Co.*, Civ. A. No. 14-1000, 2014 WL 1281225, at *1 (E.D. Pa. Mar. 28, 2014) ("The plaintiff asserts

that she suffered serious, severe and permanent bodily injuries. From the face of the complaint, there does not appear to be a legal certainty that the claim will be for less than $75,000.") (internal quotation marks omitted); *Alston v. Wal-Mart Stores East, L.P.*, Civ. A. No. 12-3491, 2012 WL 4321973, at *3 (E.D. Pa. Sept. 20, 2012) (amount-in-controversy requirement satisfied when plaintiff "sustained serious injuries, including a fractured ankle" and stated that she would "sustain pain and mental anguish").

32. Particularly in light of the significant damages that other plaintiffs, including those represented by plaintiffs' same attorneys, have sought in other Zostavax cases,[7] plaintiffs' claims of significant, permanent personal injuries and the compensatory damages they seek exceed this Court's minimum $75,000 jurisdictional limit.

WHEREFORE Defendants Merck & Co., Inc. and Merck Sharp & Dohme Corp. respectfully remove this action from Superior Court of New Jersey, Law Division, Middlesex County, to this Court pursuant to 28 U.S.C. § 1441.

Dated: November 8, 2018 /s/ Allison L. Hollows
Karen A. Confoy
Allison L. Hollows
**FOX ROTHSCHILD LLP**

---

[7] *See, e.g.*, *Brumfield v. Merck & Co., Inc.*, Civ. A. No. 17-CV-6526 (JFB)(ARL), 2018 WL 1955216, at *2 (E.D.N.Y. Apr. 25, 2018) (denying motion to remand in recently filed Zostavax case and noting "each plaintiff seeks $1 million in damages"); *Bentley v. Merck & Co., Inc.*, 2017 WL 2311299, at *2 n.1 (E.D. Pa. May 26, 2017) (denying motions to remand in ten Zostavax cases in which other plaintiffs sought recovery of personal injury damages, setting forth parties' "agree[ment] that the damages sought in each of these cases exceed $150,000, exclusive of interest and costs," and noting that "plaintiffs at a minimum are seeking in total in excess of $1,500,000 in these ten cases"); *Bloom v. Merck & Co., Inc.*, Civ. A. No. 2:17-cv-01789 (Doc. 16) (E.D. Pa. May 31, 2017) (similarly denying motion to remand filed in eleventh Zostavax case); *see also* **Exhibit 7**, Case Management Conference Memorandum, *Bentley v. Merck & Co., Inc.*, Civ. A. No. 17-cv-1122 (Doc. 1-22) (setting forth demand for "$1,000,000.00" for eye-related injuries and hypertension that plaintiff attributes to Zostavax); **Exhibit 8**, Supplemental Demands for Relief pursuant to N.Y. CPLR 3017(c) (setting forth "$1,000,00.00" demand for each plaintiff in seven multi-plaintiff Zostavax cases filed by plaintiffs' attorneys and "$1,000,000.00" demand in eighth multi-plaintiff case).

15

Princeton Pike Corporate Center
997 Lenox Drive
Lawrenceville, NJ  08648
Tel:  (609) 896-3600
Fax:  (609) 896-1469
kconfoy@foxrothschild.com
ahollows@foxrothschild.com

*Attorneys for Defendants Merck & Co., Inc.
and Merck Sharp & Dohme Corp.*